Ian Ross, WY No. 8-7571
Iris Halpern, CO No. 53112*
Stephanie Wise, CO No. 60626*
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street
Denver, CO 80205
Telephone: (303) 578-4400
Facsimile: (303) 578-4401
ir@rmlawyers.com
ih@rmlawyers.com
sw@rmlawyers.com
*Attorneys for Plaintiff*

* *Pro Hac Vice Applications Pending*

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | | |
|---|---|---|
| Plaintiff,<br><br>ERIN WOLFLEY, an individual,<br>v.<br><br>Defendants,<br><br>CONVERSE COUNTY, a municipality;<br>CONVERSE COUNTY LIBRARY SYSTEM;<br>CONVERSE COUNTY LIBRARY BOARD OF TRUSTEES;<br>MARY LIN MANER, in her individual capacity. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT**

**INTRODUCTION**

This case arises from the cognitive dissonance of a library district, of all entities, firing a librarian in retaliation for her teenage daughter's protected use of First Amendment rights. Erin Wolfley had served as a circulation clerk at the Glenrock Branch of the Converse County Library System ("Glenrock Library") for over six years without a single disciplinary action. On June 11, 2025, Ms. Wolfley's then-seventeen-year-old daughter, Aspen Wolfley, ("Aspen") posted on Facebook about the unsafe ninety-degree heat inside the Glenrock Library — a building with well-documented HVAC failures dating back to when it opened in 2015. Seven days later, the Converse County Library System terminated Ms. Wolfley and her direct supervisor, Glenrock Library Manager Jennifer Kofoed. No justification for the terminations was offered beyond management's objection to the Facebook post criticizing the library district for subjecting patrons and employees to unsafe heat levels at the library branch. Defendants' conduct violated Ms. Wolfley's and her daughter Aspen's rights to freedom of speech and familial association under the First Amendment

to the United States Constitution, enforceable through 42 U.S.C. § 1983. Such violations must be vindicated by this Court.

## JURISDICTION, VENUE, AND PARTIES

1. This action is authorized and instituted under the Constitution and laws of the United States pursuant to 42 U.S.C. § 1983. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

2. Venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391(b). All Defendants reside within and/or perform official duties within the state of Wyoming. This Court, accordingly, has personal jurisdiction over each Defendant.

3. At all times relevant hereto, Erin Wolfley was a citizen of the United States and a resident of the State of Wyoming.

4. Erin Wolfley is a resident of Glenrock, Wyoming, a city located within the predominantly rural Converse County located in northern Wyoming.

5. Defendant Converse County is a municipality in the State of Wyoming.

6. Defendant Converse County is statutorily obligated to fund Defendant Converse County Library System.

7. Defendant Converse County Library System's employees are employees of Defendant Converse County.

8. Defendant Converse County Library System serves Converse County, Wyoming from two branches: Douglas Library and Glenrock Library.

9. Defendant Converse County Library Board of Trustees ("Library Board") acts as the final policymaker for Defendant Converse County Library System.

10. Defendant Library Board is the governing body of Defendant Converse County Library System.

11. Defendant Library Board controls Defendant Converse County Library System's funds, forms its policies, and determines the rules and regulations governing services and personnel.

12. At all relevant times, Defendant Mary Lin Maner was Director of Defendant Converse County Library System, reported to Defendant Library Board, and had final policymaking authority over employment decisions, including over Ms. Wolfley's employment.

## FACTUAL ALLEGATIONS

### *Erin Wolfley Provides Exemplary Services to Converse County*

13. Defendant Converse County Library System hired Ms. Wolfley as a circulation clerk at the Glenrock Library in March of 2019.

14. For more than six years, Ms. Wolfley demonstrated unwavering dedication to serving her community from that role, assisting patrons in their quests for knowledge.

15. During her tenure, Ms. Wolfley's contributions to the Glenrock Library extended far beyond her job description.

16. Ms. Wolfley consistently found ways to connect with community members and help patrons outside traditional library services.

17. Ms. Wolfley took initiative in developing community-serving programs and created numerous innovative programs that transformed the Glenrock Library into a vital community resource.

18. Those programs included a Food Cupboard partnership with the Glenrock Area Food Pantry a Formalwear Closet providing free formal attire to teenagers across multiple counties; a Family Room for supervised visits by Department of Family Services workers; a

permanent Book Sale Room to provide space for community book donations that previously had been turned away and later partnerships with Better World Books as donations increased; a "Library of Things" lending non-traditional items in collaboration with local health organizations; and the Love Local Valentine Festival that grew so popular it was transferred to the Chamber of Commerce.

19. Throughout her employment, Ms. Wolfley consistently received positive performance evaluations and had no prior disciplinary issues.

***Glenrock Library Experiences Ongoing HVAC Issues***

20. The Glenrock Library has experienced chronic, well-documented HVAC failures since the building opened in 2015.

21. The Glenrock Library publicly closed or operated from alternate facilities due to HVAC malfunctions multiple times in August 2019, January-February 2021, and January 2024.

22. Defendant Converse County Library System announced each closure of the Glenrock Library on its public Facebook page.

23. Defendant Converse County had spent more than $130,000 on repairs by 2021.

24. A complete system replacement costing $1.5 million was not planned to begin until spring 2026.

25. These repeated failures were common knowledge throughout the Glenrock community.

26. Defendant Converse County Library System's administration never provided Glenrock Library staff with guidance on what to tell patrons about the ongoing HVAC problems.

27. Defendant Converse County Library System's administration took no precautions to protect employees from heat extremes inside the Glenrock Library building.

28. Heat stroke and heat exhaustion, which can result in permanent disability or death, are among the heat-related illnesses that the National Institute for Occupational Safety and Health (NIOSH) has identified.

29. In June 2025, the HVAC system failed again.

30. During a heat wave in mid-June, temperatures inside the Glenrock Library reached ninety degrees.

31. Glenrock Library staff worked in heat exceeding eighty-five to ninety degrees in the back office and over eighty degrees upstairs, with no air conditioning for longer than a month.

32. By June 9, 2025, Glenrock Library staff kept the lights off to help.

33. Everyone who walked into the Glenrock Library noticed the heat, and many complained to staff about it.

34. Around June 11, 2025, Glenrock Library Manager Jennifer Kofoed sought guidance from Defendant Maner regarding when conditions warranted closing the Glenrock Library for safety.

35. Despite temperatures inside the building exceeding ninety degrees, Defendant Maner told Ms. Kofoed that the conditions were "not dangerous" and advised staff to stay hydrated and use cold towels rather than closing the building for safety.

36. Ms. Kofoed shared these guidelines with Glenrock Library staff individually because both staff and patrons had been expressing concerns about the extreme heat.

37. Based on Defendant Maner's cooling advice, Ms. Wolfley asked her seventeen-year-old daughter Aspen to bring ice to the Glenrock Library for her.

38. When Aspen asked why, Ms. Wolfley explained the situation.

39. Ms. Wolfley also sent Aspen a photograph of a thermometer showing the ninety-degree temperature inside the building.



*Temperature in Glenrock Library*

40. Later that day, Aspen posted on the “Glenrock Rant and Rave” Facebook group expressing concern about unsafe working conditions, noting that Glenrock Library staff were working in a ninety-degree building.

41. Defendant Converse County Library System does not manage or moderate the Glenrock Rant and Rave Facebook group.

42. The Glenrock Rant and Rave Facebook page is a private, third-party Facebook group where Glenrock residents post criticisms (*i.e.*, “rants”) or commendations (*i.e.*, “raves”).

43. Aspen posted publicly observable facts about unsafe conditions in a taxpayer-funded public building.



Glenrock Public Bulletin Board Post

I am not sure where to go with this but I want to express my concerns about the public library, I was in the library today the HVAC system broke in the building so it is ridiculously hot, and the librarians are currently working in a 90 degree building. the "director" sent the boss and librarians in the building a LIST of common sense strategies to "staying chilled" and told them that "it's not dangerous, drink water!" and "wrap cold towels around your neck". They ordered fans but they won't be here until sunday? I'm not a professional but in the past they closed when it was too hot or too cold... I believe that when it gets to the point of being told they need to wrap cold towels around their neck they should be able to go home and chill down correct?

*The Facebook Post*

44. Ms. Wolfley's daughter Aspen, a library patron exercising her own First Amendment rights, did not mention any of Defendant Converse County Library System's employees by name in her post.

45. The post's content was factually accurate and generated community discussion before Aspen deleted it two days later.

46. Ms. Wolfley had no idea her daughter Aspen would publicly post about the conditions, never asked her to post anything publicly, and upon learning of the post on Friday, June 13, asked her to remove it, which she did that afternoon.

***Defendant Maner Interrogates Ms. Wolfley About Her Daughter Aspen's Facebook Post***

47. After business hours on Friday, June 13, 2025, Ms. Kofoed texted Ms. Wolfley requesting she adjust her schedule for a mandatory meeting with Defendant Maner on Monday.

48. Ms. Kofoed relayed Defendant Maner's insistence that the meeting was not optional.

49. Ms. Wolfley responded that she had a previously scheduled medical appointment for her daughter and could not meet with Defendant Maner at that time.

50. On Saturday, June 14, 2025, during business hours, Ms. Wolfley emailed Defendant Maner offering multiple alternative meeting times that week (Tuesday, Wednesday, Friday, or Saturday).

51. Defendant Maner responded that she would let Ms. Wolfley know about an alternative time but did not contact Ms. Wolfley that Monday.

52. Instead, on Tuesday morning, June 17, 2025, without any advance notice, Defendant Maner arrived at the Glenrock Library around 10:00 a.m. with two members of Defendant Library Board: President Michelle Moe and Secretary/Treasurer Connie Glenn.

53. Ms. Wolfley was surprised to find herself in an unscheduled disciplinary meeting with no opportunity to prepare.

54. During this meeting, Defendant Maner accused Ms. Wolfley of violating Defendant Converse County Library System's confidentiality and representation policies because Ms. Wolfley told Aspen about how hot it was in the library, Defendant Maner erroneously perceived Aspen's post as Ms. Wolfley's speech, and/or Defendant Maner associated Ms. Wolfley with Aspen and Aspen's post about the HVAC failures.

55. The confidentiality policy, titled "Confidentiality," states the following:

> It is the policy of CCLS that board members and employees of CCLS may not disclose, divulge, or make accessible confidential information belonging to, or obtained through their affiliation with CCLS, to any person, including relatives, friends, and business or professional associates, other than to persons who have a legitimate need for such information and to whom CCLS has authorized disclosure.
>
> Board members and employees shall use confidential information solely for the purpose of performing their assigned duties for CCLS.

> This policy is not intended to prevent disclosure where disclosure is required by law.
>
> Board members, employees, volunteers and contractors must exercise good judgment and care at all times to avoid unauthorized or improper disclosures of confidential information. Conversations in public places, such as restaurants, elevators, and public transportation, should be limited to matters that do not pertain to information of a sensitive or confidential nature. In addition, board members and employees should be sensitive to the risk or inadvertent disclosure and should, for example, refrain from leaving confidential information on desks or otherwise in plain view, and refrain from the use of speaker phones to discuss confidential information where the conversation could be heard by unauthorized persons.
>
> At the end of a board member's term in office, or upon the termination of an employee's, volunteer's, or contractor's relationship with CCLS, he or she shall return, at the request of CCLS, all documents, papers, and other materials, regardless of medium, which may contain or be derived from confidential information, in his/her possession.

56. The "Confidentiality" policy does not prohibit an employee from sharing information about how hot it is in the library with a family member.

57. The representation policy, titled "Representing the Library," states the following:

> An employee may not speak to the news media as an official or unofficial spokesperson of the Library without prior clearance from the Library Director. All inquiries from the media should be referred to the Library Director.
>
> No employee shall make a public appearance, news release, or public speech representing the Library without the specific knowledge and prior authorization of the Library Director or designee.
>
> This policy includes advertising/publicity connected with social media Only designated staff will make Facebook, Twitter, or Pinterest posts to official Library accounts. Library Director or designee shall review comments or posts to Library social media accounts for release or deletion.

> No employee shall release to the public, in any manner, any information about the Library that has been designated as "privileged" by the Library Director or Library Board.

58. The "Representing the Library" policy does not prohibit an employee from sharing information about how hot it is in the library with a family member.

59. Defendant Maner asked Ms. Wolfley what her "consequences" or "punishment" should be.

60. When Ms. Wolfley asked if she would lose her job, Defendant Maner stated she did not know and that she would get back to her.

61. Defendant Maner separately interrogated Ms. Kofoed, asking whether she believed Ms. Wolfley had violated any policies and criticizing Ms. Kofoed for not investigating and reporting the post to her.

62. That same afternoon, Ms. Wolfley sent a detailed email to Defendant Library Board and to Kristin Watson, Defendant Converse County's Human Resources Director, requesting clarification of the process and her rights.

63. Ms. Wolfley specifically noted she had reviewed the employee handbook policies and believed the confidentiality policy applied to "internal data, patron information, and sensitive organizational materials," not to "observable conditions inside a public facility—particularly longstanding infrastructure issues that directly affect staff and patrons."

64. Ms. Wolfley emphasized she had made no public statements and had not violated the policy regarding representing Defendant Converse County Library System.

65. Ms. Wolfley received no response from any board member or human resources.

***Defendant Maner Terminates Ms. Wolfley Because of Her Daughter Aspen's Facebook Post***

66. Defendant Maner emailed Ms. Wolfley the following day, Wednesday, June 18, 2025, about a date and time for a follow-up meeting.

67. Ms. Wolfley requested that human resources attend the meeting.

68. Defendant Maner declined Ms. Wolfley's request, informing her that a human resources representative was "unavailable."

69. Ms. Wolfley then requested that her direct supervisor, Ms. Kofoed, attend.

70. Defendant Maner acquiesced to the request and instructed Ms. Wolfley that the meeting was to take place that same afternoon.

71. That afternoon, Mses. Wolfley and Kofoed met with Defendant Maner, Assistant Director Crystal Hegglund, and Douglas Library Circulation Manager Becca Muncy at the Glenrock Library, where the HVAC was still not functioning.

72. At the start of the meeting, Defendant Maner immediately terminated both Mses. Wolfley and Kofoed.

73. Defendant Maner provided no additional explanation and gave both women their final paychecks.

74. The sole stated reason at that time for Ms. Wolfley's termination was her daughter Aspen's Facebook post.

75. The sole stated reason at that time for Ms. Kofoed's termination was Aspen's Facebook post.

76. Defendant Maner did not question either woman about anything other than the Facebook post at this time.

***Defendant Maner Later Establishes a Policy Requiring Library Staff to Monitor and Report Patrons' Social Media Activity***

77. After terminating Mses. Wolfley and Kofoed, Defendant Maner promulgated a new media protocol governing staff communications with all media sources, including social media.

78. Approximately one week after the terminations, Defendant Maner called remaining staff of Defendant Converse County Library System into a meeting and presented this new protocol requiring employees to notify the library director or assistant director if they observed posts about the library on social media public pages.

> **Protocol for all Media**
>
> Employees may not speak to news media as an official or unofficial spokesperson. This includes advertising/publicity connected with social media. All inquiries are to be directed to the library director.
>
> If you see a post on Social media public pages, please notify the library director or assistant director. Do not comment. We will monitor.
>
> Social Media on private/personal pages: do not comment, let it be.
>
> If any patrons, public, or news media ask staff about issues that may be in the news or on social media at the libraries, please direct them to the library director and/or assistant director. You do not need to respond or give an answer.

*Defendant Converse County Library System's New Media Protocol*

79. Defendant Converse County Library System's employee handbook contained no such policy requiring employees to monitor or report social media posts at the time Mses. Wolfley and Kofoed were terminated.

80. Nor could Defendant Converse County Library System lawfully adopt a policy with the purpose or effect of facilitating retaliation against patrons or community members based on their public commentary about the Library System because, as Defendants are aware, such a policy would unlawfully chill First-Amendment-protected speech.

***Ms. Wolfley Continues to Suffer the Consequences of Defendants' Unlawful Conduct***

81. Defendants have caused Ms. Wolfley significant emotional distress and suffering.

82. Defendants deprived Ms. Wolfley of the full financial benefit of employment.

83. Defendants abruptly cut Ms. Wolfley's career short in her prime earning years, significantly and negatively impacting her future earnings and retirement benefits.

84. Ms. Wolfley cared deeply about the mission of public libraries and wanted nothing more than to continue her employment at Glenrock Library.

85. The loss was especially painful because Ms. Wolfley had built her identity and role in the community around her library career.

86. After working for the Glenrock Library for more than six years, Ms. Wolfley would have been grateful to return in any capacity, which is why she applied for multiple positions at the Glenrock Library, including as a part-time janitor.

87. This wrongful termination has foreclosed Ms. Wolfley's ability to get a job with another library in Converse County.

88. Ms. Wolfley has been unable to recover analogous employment in the field she dedicated her career to and loved.

89. Since Defendants terminated her employment, Ms. Wolfley has had to piece together income through a patchwork of multiple lower-wage, part-time, seasonal, and gig positions.

90. Defendants' termination of Ms. Wolfley's employment has been hard on her entire family. Even though Ms. Wolfley has cobbled together enough part-time work to earn similar pay, doing so has required her to work substantially longer hours just to maintain financial stability. As

a result, she often works for weeks with no day off and misses important family time, including regular dinners together.

91. Nevertheless, Ms. Wolfley's dedication to public libraries is so enduring that, in January 2026, she enrolled full-time at Pennsylvania Western University to pursue a Master of Science in Library Science, with an anticipated graduation date of April 30, 2027.

92. Defendants abruptly ended a six-year career of exemplary service, leaving Ms. Wolfley without stable income, without retirement benefits she had spent years accruing, and with no option but to take on patchwork employment to rebuild a career that should never have been taken from her.

93. Defendants damaged Ms. Wolfley's intimate relationship with her daughter Aspen because they made Aspen's Facebook post the cause of her mother's lost livelihood.

94. As a result, Defendants placed both mother and daughter in the constitutionally intolerable position of having to fear that ordinary family communications or Aspen's future public commentary could again be used to punish Ms. Wolfley.

95. That consequence chilled Ms. Wolfley's and Aspen's willingness to speak freely and burdened Ms. Wolfley's and Aspen's ability to maintain their close familial relationship.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of the First Amendment, Brought Through 42 U.S.C. § 1983
### Retaliation against Protected Speech and Association
### (Against All Defendants)

96. Ms. Wolfley hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

97. The right of freedom of speech is fundamental to a functioning democratic society.

98. Defendant Maner fired Ms. Wolfley because Ms. Wolfley's teenage daughter Aspen criticized Defendants on the internet—something she had every right to do.

99. Defendant Maner fired Ms. Wolfley because of Ms. Wolfley's protected speech to Aspen, perceived speech via Aspen, and/or familial association with Aspen and Aspen's speech.

100. The abrupt dismissal of Ms. Wolfley constituted a clear violation of her and her daughter Aspen's constitutional right to freedoms of speech and association.

101. A public employee may not be dismissed where the constitution prohibits such action.

102. It is well established that the First Amendment of the United States Constitution protects public employees from retaliation because of protected speech.

103. A government agency cannot take adverse employment action against an employee based on her protected speech.

104. First Amendment retaliation against a government employee for her family member's speech violates both the free speech and freedom of association components of the First Amendment.

105. Two distinct components comprise the First Amendment's right of association: (1) a right of human relationships; and (2) right to associate for the purposes of engaging in protected activities.

106. The First Amendment protects a public employee from retaliation based on the speech of those with whom she shares an intimate relationship, such as an immediate family member.

107. Today, online communication, including those on social networking sites, is germane to speech and dissent.

108. The importance of online communication to contemporary society is widely recognized.

109. Defendant Maner abused her authority to fire public employees in a bald attempt to stifle public online dissent.

110. Courts have widely recognized that the First Amendment protects speech over the internet.

111. Defendant Maner retaliated against Ms. Wolfley for her daughter Aspen's speech.

112. Defendant Maner fired Ms. Wolfley because she associated Ms. Wolfley with her daughter Aspen and the speech of her daughter.

113. Alternatively, Defendant Maner fired Ms. Wolfley because Defendant Maner attributed Aspen's speech to Ms. Wolfley, erroneously perceiving Aspen's speech as reflecting Ms. Wolfley's speech.

114. Alternatively, Defendant Maner fired Ms. Wolfley because of Ms. Wolfley's protected speech in asking her daughter to bring her ice because of the temperature at the library.

115. Defendant Maner does not have, nor can she concoct, a plausible explanation for terminating Ms. Wolfley other than as a punitive response to her daughter Aspen's protected speech after Ms. Wolfley asked for ice.

116. The substantive rights at issue in this case stem from the First Amendment of the United States Constitution.

117. Any action taken in response to First Amendment protected speech and association is actionable under Section 1983 to the extent that government retaliation tends to chill the exercise of free speech.

118. Whether retaliation tends to chill free speech is an objective standard.

119. A government entity is liable for unconstitutional actions or decisions of its officials.

120. Section 1983 liability attaches when an official with final policymaking authority takes the action or makes the decision.

121. Defendant Maner, as Director of Defendant Converse County Library System, undoubtedly had final policymaking authority with respect to all employment decisions.

122. Defendant Maner personally terminated Ms. Wolfley.

123. Defendant Maner signed Ms. Wolfley's final paycheck.

124. Defendant Converse County is liable under *Monell* for Defendant Maner's unconstitutional actions.

125. At all times relevant to this claim, Defendant Maner was acting under color of state law.

126. At all times relevant to this claim, Ms. Wolfley enjoyed the First Amendment rights to engage in speech on matters of public concern; be free from state action that deters, and chills protected speech; and to associate freely.

127. As alleged herein, Ms. Wolfley spoke outside the scope of her job duties.

128. Ms. Wolfley was not responsible for making determinations about freedom of speech, nor was she responsible for making decisions regarding the Glenrock Library's HVAC system.

129. As a public employee, Ms. Wolfley's job duties did not (nor could they) include systematic suppression of the First Amendment rights of library patrons.

130. Ms. Wolfley's daughter Aspen's speech on these subjects did not contribute to or facilitate Ms. Wolfley's performance of her job duties.

131. The suppression of speech and association in public libraries is also a matter of public concern.

132. As alleged herein, Defendant Maner had final policymaking authority from Defendants Converse County, Library Board, and Converse County Library System when she retaliated against Ms. Wolfley intending to chill and deter her protected speech and association.

133. As alleged herein, Defendants Converse County, Library Board, and Converse County Library System were an affirmative link and a causal connection to the retaliation carried out by the final policymakers.

134. Defendant Maner had control of employment and operational decisions and exercised that control to retaliate against Ms. Wolfley.

135. Specifically, Defendant Maner engaged in retaliation, that is, she engaged in retaliation based on her disagreement with the *content* of Ms. Wolfley's protected speech to Aspen, perceived speech via Aspen, and/or familial association with Aspen and Aspen's speech.

136. At all times relevant to this claim, it was clearly established that public employers could not retaliate against public employees who engage in protected speech and association because of disagreements with their viewpoints. Any reasonable public employer acting under color of state law knew or should have known of these clearly established rights.

137. Among other acts of retaliation alleged herein, Defendant Maner ultimately terminated Ms. Wolfley's employment.

138. Defendant Maner's actions, as alleged herein, were undertaken with malice or reckless disregard for Ms. Wolfley's federally protected rights.

139. The value of Ms. Wolfley's protected speech to Aspen, perceived speech via Aspen, and/or familial association with Aspen and Aspen's speech outweighed any legitimate

governmental interest. Indeed, Defendant Maner's retaliation against Ms. Wolfley was intentional, in reckless or callous disregard for her federally protected rights, and not in furtherance of any legitimate governmental interest.

140. As a result of Defendant Maner's retaliation, Ms. Wolfley suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Wolfley respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including but not limited to the following:

a. All declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages, including but not limited to back pay, front pay, and lost benefits, as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

e. Punitive damages for all claims as allowed by law, to the maximum amount permitted and in an amount to be determined at trial;

f. Prejudgment and post-judgment interest at the highest lawful rate;

g. A tax-offset;

h. Attorney fees and costs; and

h. Such further relief as justice requires, including injunctive relief against all Defendants to cease and desist from violating the First Amendment in the operations of the Converse County Library.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Ian Ross*
Ian Ross, WY No. 8-7571
Iris Halpern, CO No. 53112*
Stephanie Wise, CO No. 60626*
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Denver, CO 80205
Telephone: (303) 578-4400
Facsimile: (303) 578-4401
ir@rmlawyers.com
ih@rmlawyers.com
sw@rmlawyers.com

*Attorneys for Plaintiff*
** Pro Hac Vice Application Pending*